**In the Matter of the CLERK'S PROPOSAL REGARDING the CONTRACTING OUT OF MICROFILMING OPERATIONS.**

No. 94500 9505 MS 600.

Supreme Court of Indiana.

May 25, 1995.

*ORDER*

On April 5, 1995, the Clerk of the Indiana Supreme Court, Court of Appeals, and Tax Court ("Clerk") distributed a memorandum concerning a proposal to contract out the Clerk's microfilming operations. The memorandum was sent to the Chief Justice of the Indiana Supreme Court, the Chief Judge of the Indiana Court of Appeals, and the Judge of the Tax Court. The proposal has been considered by these respective judges and by the entire Indiana Supreme Court.

Having been also informed by the Clerk that his plan for implementing the proposal will seek to minimize dislocation of current employees, the Court authorizes the Clerk to proceed as proposed in the April 5 memorandum, which is attached to this Order and is incorporated herein by reference. This proposal is authorized with the understanding that the Clerk retains all legal responsibilities as to the availability, accuracy, and completeness of the records of the courts served by the Clerk. Further, the technical standards of any contract for the microfilming of court records must be approved by the Division of State Court Administration. In addition, any substantial deviation from the proposal must be authorized by the Supreme Court.

The Clerk is directed to send a copy of this Order to Bruce Kotzan, the Executive Director of the Division of State Court Administration.

All Justices concur.

## ATTACHMENT

### Memorandum

To: The Honorable Randall T. Shepard, Chief Justice of the Indiana Supreme Court

The Honorable John T. Sharpnack, Chief Judge of the Indiana Court of Appeals

The Honorable Thomas G. Fisher, Presiding Judge of the Indiana State Tax Court

From: H. John Okeson, Clerk of the Courts

Robert D. Bohnsack, Deputy Clerk

Date: April 5, 1995

Re: Privatization of the Clerk's microfilming operation

### Background

The Records Management division of the Clerk's office microfilms all of the records of the Supreme Court, Court of Appeals and Tax Court per Supreme Court Order 784 S 290, filed with the Clerk on July 25, 1984, and subsequent orders issued by the Court of Appeals and Tax Court. These orders authorize the Clerk to microfilm any record, order, opinion, brief, transcript, pleading, and other document maintained in a paper medium by the Clerk on behalf of these courts. The documents are microfilmed to allow for permanent preservation and to conserve the Clerk's limited storage space.

The Clerk's microfilming operation began in the fall of 1984 while Marjorie O'Laughlin was the Clerk. At that time, the Clerk had one microfilm camera and produced very few images. The Records Management division was then located in Room 130 of the State House.

In 1987, newly elected Clerk Daniel Rock Heiser broadened the scope of the Clerk's microfilm operation. These efforts resulted in an operation which prepared documents for filming, filmed them, edited the filmed product and stored the final product. By the end of Clerk Heiser's term, the division was filming with four cameras and employed several other pieces of micrographic equipment. The division also moved to its present location in the Indiana Government Center South.

The essential nature of the microfilming operation remained unchanged during the tenure of Clerk Dwayne M. Brown. The operation remained in the IGCS and obtained no new equipment. During Clerk Brown's tenure, however, the microfilm production of the division dropped drastically, as depicted in the chart. Production dropped due to problems with staff members which resulted in sloppy work. The management was also very restrictive and did not encourage the employees to take initiative and have pride in their work.

## Microfilm Production

Number of rolls produced

### Production

The caseloads of the Supreme Court, Court of Appeals, and Indiana State Tax Court are on the rise, and show no sign of slowing. The total number of cases initiated in these courts in 1991 via the Clerk's office was 3,366. By 1994, the total had risen to 4,295. Considering the Clerk's limited storage space, it is very important for the Records Management division to maintain, and if possible, increase its productivity.

The division's current microfilm workload consists of (1) civil and Tax Court cases transmitted to the division with a 60–day retention schedule, and (2) criminal cases, which are subject to a five-year retention schedule. We anticipate filming 1,700 civil cases and 590 criminal cases in 1995. In 1996, we will have 1,700 civil cases and 1,600

criminal cases available for filming. The average contemporary case consists of 522 images, and seven of these cases will fit on an average roll of film that consists of 3,529 images.

In addition to the current caseload, filming the 1,500 cubic feet (or 2.8 million images) of aging documents presently stored at the State Record Center is also very important. The Record Center is a very poor storage facility. The roof leaks, and there are no temperature controls. Documents stored at the Record Center will ultimately become too brittle and yellowed to be of use. Thus, microfilming (or some other form of image preservation) must occur to create a useful, permanent record.

Since taking office January 1, 1995, we have made a structured effort to increase the division's productivity. We believe a strong production schedule is the most efficient use of the money we spent on employees and equipment. In 1994, the division employed an average of nine employees and produced 8.73 rolls of microfilm per week for a total of 454 rolls. Using tighter scheduling and a better distribution of staff talent, we are on track to produce 12 to 14 rolls per week (or 650 to 700 rolls per year) in 1995 with a seven-person staff. Every two weeks a new schedule is developed to accommodate the upcoming workload. We also encourage the Records Management staff to voice their ideas and opinions, because they are the experts. In sum, we are spending less money and producing more images than last year.

### Costs

The single largest costs in the microfilm process are the employees' salaries and benefits. Including the present manager, Robert Bohnsack, we have seven full-time employees. The total cost for their salaries and benefits is $134,349.

We also pay $6,258 a year on service agreements for the four microfilm cameras, $3,343 a year for the service agreement on the reader/printer, and $1,031 for various parts and supplies. In addition to labor, it costs $14.60 to purchase a roll of film, pro-cess it, duplicate it, and store it in the acid-free box to preserve the original.

In the microfilm industry, cost is measured by price per image. We are generally able to get 3,500 images per 100 foot roll of 16 mm microfilm. If we were to produce 1.5 million images per year, our cost per image would be $.10 per image (total cost of $151,239). This cost does not include an allocation for equipment depreciation, a share of the time that the Clerk and Chief Deputy Clerk contribute to the Records Management division, nor the employee time spent transmitting court documents to the Records Management division. Private vendors are producing the same product for as little as $.02 to $.05 per image for a total cost of $30,000 to $75,000 for 1.5 million images.

Based on our revised production schedules and practices, we have set an admittedly ambitious goal of producing 2,450,000 images in 1995. (Our current pace would result in 2,450,000 images being produced in 1995, at a cost of $.06 per image. It is unlikely that we can sustain this pace, because the current productivity rates are based on filming only contemporary records. The number of contemporary cases available for filming is quickly diminishing and soon we will have to begin filming the older documents which require greater preparation. Thus, our pace will slow considerably.) Were we to produce 2,450,000 images in a year, our fixed cost will exceed $155,000 although our price per image would be approximately $.06. With increased production we can reduce our price per image, but we will have trouble reducing our costs. If a private vendor produced 2,450,000 images at $.05 per image, it would cost him $122,500.00, saving the Clerk and Indiana taxpayers a minimum of $32,500.00 in production costs and $70,000 in new equipment (see "Privatization Issues" below).

All of the previously mentioned data is based on filming contemporary court documents. Production and cost are adversely affected when the division prepares and films old court documents. An average old court case has 400 images and we can get ten average old cases on one roll of film. We have 1,500 cubic feet of old cases stored at the Record Center. If we only filmed old

cases our production rate would be eleven rolls per week (or 44,000 images per week). The yearly production would then be between 550 and 572 rolls per week (or between 2,200,000 and 2,288,000 images per year).

### Privatization Issues

During the 1994 campaign we pledged to explore the privatization of the Clerk's microfilm operation. The pledge was based upon a belief that privatization would reduce costs, maintain product quality, and allow greater production if deemed necessary. After a careful two-month study, it is apparent that the privatization of the microfilm operation is feasible, and, further, that our initial reasons for exploring the operation were valid.

Several Indiana firms and the Indiana Commission on Public Records can produce the high quality microfilm mandated by Administrative Rule 6. Working closely with a firm which is ultimately awarded a contract, we believe that we can satisfy the security, quality, and accessibility concerns inherent in any privatization scheme.

We are now at a significant juncture. If we continue to do our own microfilming, we may need to make some significant capital expenditures. The four cameras we have are outdated and produce microfilm that barely meets the standards of Administrative Rule 6. According to John Newman, Director of the Information Management Section for the Office of State Court Administration, the equipment should have been replaced a few years ago. One camera was purchased in 1984 and the other three are reconditioned 1984 cameras obtained in 1988. In Mr. Newman's November 1, 1994, memorandum to Kimberly Bradford, Supreme Court Administrator, he stated, "It is imperative that the high standards being maintained by the Clerk's microfilm section not be jeopardized in the future due to deterioration of the equipment."

Mr. Newman believes it would cost the office approximately $70,000 to replace the four cameras and reader/printer. This capital outlay can be avoided with the privatization of the microfilm operation. We believe the beginning of the next budget year would be a very appropriate time to implement a new system.

### State Procurement Law Issues

The Judicial Department of Indiana State government is not subject to the State's general procurement and bidding scheme. There is case law which strongly suggests that the Clerk's office is part of the judicial department, see Tucker v. State, 218 Ind. 614, 35 N.E.2d 270 (1941), and we have been advised by private legal counsel that there is no statute to the contrary. Thus, as a member of the Judicial Department, it appears that the Clerk's office is not subject to the state procurement statutes administered by the Department of Administration.

We still intend to engage in a very competitive bidding process. We also do not intend to keep this project a secret. Secrecy would make it difficult to have a competitive bidding process. Exemption from these statutes would simply allow us to pursue the privatization of our microfilm operation in a more timely manner.

### Initial Bid

There are several different configurations available to us if we contract with a private vendor to perform our microfilm operation. The primary functions of the operation are: the preparation of the documents, the filming of the documents, the editing of the film, and the storage and retrieval of the film and documents.

In our first venture with a private vendor we may ask the vendor to perform document preparation, filming and editing on site. We would retain one or two employees on staff to perform the library functions of the office and assist with the document preparation. The other employee would manage the daily contract operations, and serve as the liaison between the Clerk and the private vendor. The contract manager would also monitor the quality of the documents to ensure that the vendor was meeting all applicable standards.

Some vendors may want to take the documents to another site for filming and editing. The originals and the film would then be returned to the Clerk. In other situations, private vendors have also demonstrated an

ability to manage the library/retrieval aspects of a records management operation. Indeed, our initial bid solicitation may request proposals for many configurations that may be desirable now or in the future. These proposals will provide us with fresh ideas on how the Records Management division can be run, and allow the private vendors to demonstrate their strengths.

We will be sending our initial request for proposals to many information management/micrographic firms across the state. We will also be contacting the Commission on Public Records to see if they are interested in bidding on the project. As noted above, our goal is to secure the most competitive bid.

## Conclusion

We believe the privatization of the Clerk's microfilm operation will save the taxpayers of Indiana money while ensuring the security, quality, and accessibility of court documents. We are now prepared to move forward with this project, and begin preparing a request for proposals. We would appreciate hearing your comments and concerns at your earliest convenience.